☐ **ORIGINAL**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

**CV 10 3470**

-----------------------------------------------------------------X

NANCY GENOVESE,

                      Plaintiff,

    -against-

TOWN OF SOUTHAMPTON; COUNTY OF
SUFFOLK; Southampton Town Police Lieutenant
ROBERT IBERGER; Suffolk County Undersheriff
JOSEPH T. CARACAPPA; Suffolk County Deputy
Sheriff ROBERT CARLOCK; Suffolk County Sheriff
Lieutenant FREDERICK LUETE; and "JOHN and/or
JANE DOES" 1 through 10 (whose identities are
currently unknown to plaintiff but who are believed
to be employees of the Suffolk County Sheriff's
Office), all of whom are sued in their individual and
official capacities,

                Defendants.

-----------------------------------------------------------------X

**Docket No.:**

**COMPLAINT**

**JURY TRIAL DEMANDED**

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y

JUL 29 2010 ★

LONG ISLAND OFFICE

**BIANCO, J.**

**TOMLINSON, M**

       Plaintiff NANCY GENOVESE, by and through her attorneys The Law Offices of
Frederick K. Brewington and Beldock Levine & Hoffman LLP, for her complaint alleges as
follows:

**PRELIMINARY STATEMENT**

       1.    This is an action for monetary damages against the TOWN OF
SOUTHAMPTON, COUNTY OF SUFFOLK, ROBERT IBERGER, JOSEPH CARACAPPA,
ROBERT CARLOCK, FREDERICK LUETE, and "JOHN and/or JANE DOES" 1 though 10,
representing unknown and unidentified persons believed to be members of the Suffolk County
Sheriff's Office, for committing acts under color of law, depriving plaintiff of rights secured by
the Constitution and laws of the United States and State of New York, including but not limited
to assault, battery, false arrest, malicious prosecution, unreasonable and excessive force,

intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.

## JURISDICTION

2.     This federal civil rights action is brought pursuant to 42 U.S.C. §§ 1983, 1986, 1988 and the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and pursuant to Article 1 §§ 6, 8, 11 and 12 of the Constitution of the State of New York.

3.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and the aforementioned statutory and constitutional provisions. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367 to hear and decide claims arising under state law.

## VENUE

4.     Venue is properly laid in this District under 28 U.S.C. § 1391(b), this being the District in which at least one of the defendants resides and where the actions complained of herein occurred.

## PARTIES

5.     At all relevant times, plaintiff NANCY GENOVESE was and is a citizen of the United States and the State of New York.

6.     At all relevant times, defendant TOWN OF SOUTHAMPTON ("TOWN") was and is a municipality organized and existing under the laws of the State of New York with its principal offices located at 116 Hampton Road, Southampton, New York, 11968.  At all times mentioned, the Southampton Town Police Department was and is a department or agency of the TOWN.  At all relevant times, defendant TOWN was and is responsible for the control of the Town of Southampton Police Department, its agents and employees, and the TOWN was and is responsible for the appointment, training, supervision, promotion and discipline of police

-2-

officers of the TOWN, including individual defendant Lieutenant ROBERT IBERGER. In naming "TOWN," plaintiff included and intended to include the Town of Southampton Police Department.

7.      At all relevant times, defendant COUNTY OF SUFFOLK ("COUNTY") was and is a municipality organized and existing under the laws of the State of New York with its principal offices located at 310 Center Drive, Riverhead, New York 11901-3392. At all times mentioned, the Suffolk County Sheriff's Office and Suffolk County Police Department was and are departments or agencies of the COUNTY. At all relevant times, defendant COUNTY was and is responsible for the control of the Suffolk County Sheriff's Office and Suffolk County Police Department, their agents and employees, and the COUNTY was and is responsible for the appointment, training, supervision, promotion and discipline of officers, sheriffs, correction officers and civilian employees including individual defendants Undersheriff JOSEPH T. CARACAPPA, Deputy Sheriff ROBERT CARLOCK, and "JOHN and/or JANE DOES" 1 through 10. In naming "COUNTY," plaintiff included and intended to include the Suffolk County Sheriff's Office and Suffolk County Police Department.

8.      Upon information and belief, defendant Lieutenant ROBERT IBERGER is a citizen of the United States and the State of New York. At all relevant times, he was employed by defendant TOWN OF SOUTHAMPTON, and acted under color of law and under color of his authority as an officer, agent, servant and employee of defendant TOWN. Lieutenant ROBERT IBERGER is sued individually and in his official capacity.

9.      Upon information and belief, defendants Undersheriff JOSEPH T. CARACAPPA, Deputy Sheriff ROBERT CARLOCK, Suffolk County Sheriff Lieutenant FREDERICK LUETE, and "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc. (collectively, "Suffolk

-3-

County individual defendants") were and are citizens of the United States and the State of New York. At all relevant times, these individuals were employed by defendant COUNTY OF SUFFOLK and acted under color of law and under color of their authority as officers, agents, servants and employees of defendant COUNTY. These individual defendants are sued individually and in their official capacities.

<h2 align="center"><u>ADMINISTRATIVE PROCEEDINGS AND TIMELINESS</u></h2>

10.  On or about October 23, 2009, pursuant to New York General Municipal Law Section 50-e(1), plaintiff caused to be served on municipal defendants TOWN OF SOUTHAMPTON and COUNTY OF SUFFOLK timely Notices of Claim. On or about January 15, 2010, plaintiff caused to be served timely Supplemental Notices of Claim on both municipal defendants.

11.  More than thirty (30) days have elapsed since plaintiff's Notices of Claim and Supplemental Notices of Claim were served on defendants TOWN OF SOUTHAMPTON and COUNTY OF SUFFOLK. Plaintiff appeared and was questioned at an administration hearing pursuant to New York General Municipal Law Section 50-h on March 16, 2010. Both the TOWN and the COUNTY have neglected and refused to adjust or pay plaintiff's claims.

12.  This action has been commenced within one year after the state law causes of action set forth herein accrued, and within the three-year statute of limitations applicable to federal civil rights actions brought pursuant to 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

**Detainment on the Side of the Road and Related Facts**

13.     In the early evening of July 30, 2009, plaintiff NANCY GENOVESE, a thirty-three year resident of 9 Lakewood Avenue, East Quogue, New York, and mother of three, was driving home on County Road 31 past the Gabreski Airport Air National Guard ("ANG") base in Suffolk County.

14.     Plaintiff stopped her vehicle on the side of the road across the street from the ANG base in an area that is open and accessible to the public and then crossed over the road to another area near the base entryway that is also open and accessible to the public.

15.     County Road 31 in Suffolk County, New York, is a public thoroughfare on which plaintiff has often traveled.

16.     Outside the ANG base, adjacent to the public roadway sits a decorative helicopter shell, which is on display to the public and all who pass by.

17.     From inside her vehicle, plaintiff photographed the displayed helicopter shell for the purpose of illustrating a "Support Our Troops" web page.

18.     As plaintiff was preparing to continue driving on County Road 31, she was stopped and approached by defendant ROBERT IBERGER, a lieutenant with the Southampton Town Police.

19.     Defendant IBERGER was not in uniform and was driving a mini-van, which had no official insignia.

20.     At IBERGER's request, plaintiff explained why she was taking photographs.

21.     Plaintiff showed IBERGER the camera and attempted to show him the display screen of the camera so that IBERGER could see the photographs on the camera.

22.     IBERGER handled the camera without care. In an attempt to prevent IBERGER from damaging the camera, plaintiff removed the memory card containing the photographs she had taken, as well as unrelated photographs/video previously taken, and gave the card to IBERGER.

23.     To date, despite plaintiff's requests, the memory card has not been returned to her.

24.     IBERGER required plaintiff to remain where she was and would not allow her to leave.

25.     Upon information and belief, IBERGER called, without limitation, the Suffolk County Sheriff's Office and the ANG base to respond to plaintiff's presence outside the base, falsely and wrongfully informing them that plaintiff posed a terrorist threat.

26.     Defendant Suffolk County Deputy Sheriff ROBERT CARLOCK responded, along with defendant JOHN/JANE DOE members of the Suffolk County Sheriff's Office.

27.     When defendant CARLOCK arrived, he placed cameras on the roof of his vehicle aimed at plaintiff and her 18 and 20 year old sons who had come to the scene and restricted their liberty, including directing the three of them to stay in front of the cameras.

28.     Officials from the ANG base and other local and federal law enforcement agencies also responded, including, without limitation, the Southampton Police Department, the Westhampton Police Department, the FBI and the Department of Homeland Security.

29.     Plaintiff was detained and questioned at the side of the road for approximately five to six hours from about 6 p.m. until about midnight, without being provided food or water, or the opportunity to use a restroom, and without having received any warnings as to her rights. During this five to six hour period, plaintiff was not free to leave.

30.     Approximately during the first hour of plaintiff's roadside detention, defendant IBERGER, without plaintiff's consent, entered and searched her vehicle.

31.     Before arriving outside the ANG base, plaintiff had been at the local shooting range in Ridge, New York and was legally carrying in her car, in a locked case, a registered, unloaded A.R. 15 rifle, along with a registered shot gun and separately, and therefore legally, stored ammunition.

32.     During plaintiff's roadside detention, defendant IBERGER removed the rifle, contained in a hard case, from the front passenger-side floor of plaintiff's car, without her consent.

33.     Using force, defendant IBERGER pushed plaintiff when she objected to his removing the rifle in its case from her car.

34.     The rifle was seized at the scene by defendant CARLOCK, who said to plaintiff, in a disparaging tone, "You're a real right winger, aren't you?"

35.     Defendant CARLOCK taunted plaintiff, stating in words or substance that she was not going to see the rifle again.

36.     The shot gun, which was stored in its carrying bag in the trunk of plaintiff's vehicle, was later unlawfully seized by the Suffolk County Sheriff's Office after plaintiff, while in custody at the Suffolk County Jail, informed defendant Suffolk County Undersheriff JOSEPH T. CARACAPPA of its existence and location, but did not give defendants permission to search for or seize that firearm.

37.     The Suffolk County Sheriff's Office, in particular defendant Sergeant FREDERICK LUETE, continued until on or about March 23, 2010 to unlawfully seize and

illegally withhold plaintiff's rifle, shot gun and the ammunition she was legally carrying in her vehicle on July 30, 2009.

38.     During the hours plaintiff was detained on the side of the road near the ANG base on July 30, 2009, she was taunted, verbally harangued, threatened, belittled, abused, humiliated, and harassed by defendants CARLOCK and JOHN DOE members of the Suffolk County Sheriff's Office.

39.     For example, and without limitation, defendants CARLOCK and JOHN DOE members of the Suffolk County Sheriff's Office repeatedly referred to plaintiff as "a right winger" and "tea bagger," and threatened that they were going to arrest her for terrorism to make an example of her to other "tea baggers" and "right wingers."

40.     Defendant CARLOCK stated to plaintiff that the Suffolk County Sheriff's Office had "nothing to charge [her] with" but that they would "find something in order to teach all right wingers and tea baggers a lesson."

41.     These comments and others by defendants were an attempt to chill and punish plaintiff based on the defendants' perceptions and assumptions as to plaintiff's political beliefs, associations, and speech.

42.     At the roadside scene, defendants CARLOCK and JOHN DOE members of the Suffolk County Sheriff's Office also required plaintiff, without medical care or assistance, to remove the bandage from an injury to her left lower leg just above her ankle that she had received earlier that day and which, exacerbated by the stress and length of her roadside detention, was causing her to limp.

43.     Defendants CARLOCK and JOHN DOE members of the Suffolk County Sheriff's Office required Plaintiff to expose her wound to unsanitary conditions, with no legitimate purpose and no regard for plaintiff's health and well-being.

44.     Defendants CARLOCK and JOHN DOE members of the Suffolk County Sheriff's Office then further taunted plaintiff, stating that, based on her leg injury, plaintiff was going to be arrested for an unreported gun shot or knife wound.

45.     Upon information and belief, before or about midnight, officials from the ANG base and federal law enforcement agencies determined that plaintiff posed no terrorist or other security threat.

46.     At no time during the entire ordeal did plaintiff resist defendants or fail to obey instructions given to her.

47.     Upon information and belief, after most of the other law enforcement and ANG base officials had left the scene, at the direction of defendant CARLOCK, plaintiff was handcuffed by a defendant JANE DOE member of the Suffolk County Sheriff's Office.

48.     Defendant CARLOCK later falsely stated that plaintiff "threw herself on the ground when handcuffed."

49.     CARLOCK's false statement about plaintiff was repeated in various forms by defendant Suffolk County Undersheriff JOSEPH T. CARACAPPA to the press and was published, including without limitation, in an August 3, 2009 Newsday.com article, where CARACAPPA was referenced as having stated that plaintiff's "actions during her arrest and during the arraignment appeared . . . erratic" and consequently that plaintiff "is undergoing a psychiatric evaluation while at the Suffolk County [J]ail." Further, according to the article, CARACAPPA wrongly and falsely stated that plaintiff "was seen at the airfield [base] taking

pictures on previous occasions over the past few weeks and was warned to stay away," and that on one of those prior occasions plaintiff "wandered on the property looking around" and "was asked to leave" by base staff.   Similar false statements made by CARACAPPA appeared, without limitation, in an August 1, 2009 New York Post article.   Since publication and continuing to the present, CARLOCK's false statement as repeated by CARACAPPA about plaintiff's throwing herself on the ground when handcuffed, as well as CARACAPPA's other false statements about plaintiff, have remained available online and appear reprinted or excerpted on numerous websites and blogs.   Upon information and belief, CARLOCK's false statement as repeated by CARACAPPA as well as CARACAPPA's other false statements about plaintiff also contributed to other widespread false, negative and alarmist media coverage of plaintiff including, without limitation, on national and local television.

50.     Before being handcuffed roadside on July 30, 2009, plaintiff attempted to give a small shopping bag containing her cell phone and wallet to her sons.

51.     Plaintiff's wallet contained approximately $13,000 in cash, largely money she was holding to pay tuition for her sons' college and her daughter's Catholic school.

52.     Defendant CARLOCK insisted that plaintiff leave the bag containing her cell phone and wallet in the seat of her vehicle even after being informed of the amount of money in plaintiff's wallet.

53.     When plaintiff's sons objected, CARLOCK threatened to arrest them, at which point plaintiff asked her sons to comply with CARLOCK'S directive.

54.     Plaintiff informed CARLOCK that she expected all of the money to be in her wallet when she got it back.

55.     When plaintiff's sons responded to a call from the Suffolk County Sheriff's Office in the early morning hours of July 31, 2009 to pick up plaintiff's vehicle from the roadside outside the ANG base, they found and retrieved plaintiff's wallet and cell phone from inside the vehicle. The wallet contained $7,700 of the $13,000 that had been in it at the time of plaintiff's July 30, 2009 arrest. The remaining $5,300 was never returned to plaintiff.

56.     The defendants failed to safeguard plaintiff's property and/or unlawfully took her property for their own use without the permission of plaintiff.

57.     Defendant CARLOCK was unlawfully searching plaintiff's vehicle as she was removed from the roadside scene, leading to the seizure of the ammunition she was lawfully carrying in her vehicle on July 30, 2009.

58.     Prior to plaintiff's vehicle being released to her sons on July 31, 2009, in addition to the ammunition and two firearms that had been unlawfully seized by the Suffolk County Sheriff's Office, all of the contents of the glove compartment box had been removed, including without limitation, receipts for auto repairs. The contents of the glove compartment box were never returned to plaintiff.

59.     Between plaintiff's roadside detention on July 30, 2009 and the vehicle's being released to her sons on July 31, 2009, the body of the car, particularly the area around the trunk and the convertible roof had been damaged, as well as the emergency air tank stored in the trunk for use in the event of a flat tire and the interior's center console.

**At the Suffolk County Jail**

60.     Around midnight on July 30, 2009, plaintiff was transported, in handcuffs, from County Road 31, near the ANG base, to the Suffolk County Jail in Riverhead, New York.

61.     During the various times she was handcuffed and leg shackled throughout this incident (*see infra*), plaintiff endured extreme pain and injury, including, but not limited to, serious swelling and bruising, which were exacerbated because plaintiff suffers from rheumatoid arthritis.

62.     At the County Jail, plaintiff was patted down and placed in a barred cell for approximately two hours.

63.     The pat down further exacerbated plaintiff's pre-existing leg wound, causing it to bleed.

64.     While plaintiff was in the cell, defendant CARLOCK accused plaintiff of "going to go Rambo and kill our troops," told plaintiff "You will pay," and repeated his earlier statement made on the roadside that the Suffolk County Sheriff's Office had "nothing to charge [her] with" but that they would "find something in order to teach all right wingers and tea baggers a lesson."

65.     These comments and threats were a further attempt to chill and punish plaintiff based on the defendants' perceptions and assumptions as to her political beliefs, associations, and speech.

66.     Also, while plaintiff was in the cell, she was interrogated by defendant Suffolk County Undersheriff CARACAPPA without having received any warnings as to her rights.  At this time, plaintiff was not free to leave and her requests to speak to a lawyer were ignored.

67.     During this interrogation, CARACAPPA asked plaintiff, among other things, if she owned any firearms other than the A.R. 15.

68.     It was at this point that plaintiff stated that her shot gun was stored in the trunk of her vehicle.

69.     Subsequently, the Suffolk County Sheriff's Office wrongfully confiscated the shot gun from plaintiff's vehicle.

70.     Thereafter, the Sheriff's Office, in particular defendant LUETE, continued until on or about March 23, 2010 to unlawfully seize and illegally withhold plaintiff's shot gun, along with her A.R. 15 and ammunition, all of which plaintiff lawfully possessed and was legally carrying in her vehicle on July 30, 2009.   In improperly attempting to justify the unlawful retention of plaintiff's firearms and ammunition, defendant LUETE stated as a purported reason defendant CARLOCK's false statement that plaintiff had thrown herself on the ground when arrested.

71.     Following plaintiff's interrogation by CARACAPPA, she was informed that she was being arrested and charged for "terrorism."

72.     Prior to this, the Suffolk County individual defendants had falsely stated and represented that plaintiff was just being held for questioning.

73.     Plaintiff's repeated requests for a lawyer throughout the night of July 30, 2009 and the early morning hours of July 31, 2009 were totally ignored by the Suffolk County individual defendants, and she was denied her right to counsel numerous times.

**Plaintiff Taken to the Hospital**

74.     After plaintiff was informed that she was under arrest for "terrorism," she requested medical attention for her bleeding and painful left leg.

75.     After several requests, plaintiff was taken to Peconic Bay Medical Center in the early morning hours of July 31, 2009 by two defendant JOHN DOE members of the Suffolk County Sheriff's Office.

76.     There, plaintiff was handcuffed to a bed, causing her further pain and discomfort.

-13-

77.     A sonogram was performed on plaintiff's left leg from her ankle to her inner groin, requiring her to disrobe.

78.     Plaintiff requested the two defendant JOHN DOE members of the Suffolk County Sheriff's Office who were guarding her to leave the room or turn away during this process. The JOHN DOES refused, further humiliating plaintiff, as she was required to strip off her clothes and reveal her bare pelvic region for the examination, in the JOHN DOES' sight and presence.

79.     After several hours at the Medical Center, plaintiff was prescribed antibiotics and discharged back to the Suffolk County Jail with instructions on proper care for her leg wound.

80.     The Suffolk County individual defendants thereafter denied plaintiff timely and sufficient access to her prescribed medication as well as proper care for her leg wound, contributing to the development of a serious and painful staph infection.

81.     In the morning of Friday, July 31, 2009, plaintiff was questioned at the Suffolk County jail by two men, who are believed to be known to defendants and were affiliated with, upon information and belief, the Federal Bureau of Investigation.

82.     No federal complaints or charges were ever brought against plaintiff.

**Transport from County Jail to Southampton Court**

83.     On Friday, July 31, 2009, plaintiff was transported by vehicle in handcuffs and ankle restraints, notwithstanding and without regard for her leg wound, from the Suffolk County Jail to the Southampton Justice Town Court.

84.     The two defendant JOHN DOE members of the Suffolk County Sheriff's Office who transported plaintiff did not care for her safety and failed to secure her with a seatbelt.

85.     The JOHN DOE driver drove very fast and recklessly, intentionally making abrupt turns. This caused plaintiff, who was not in a seatbelt but was restrained with her hands

cuffed behind her and her ankles cuffed together, to roll about in the back seat of the vehicle, causing her pain, discomfort, fear for her safety, and extreme emotional distress.

86.     When plaintiff requested that she be buckled in and that the JOHN DOE driver slow down, the two DOES looked at one another and laughed and the JOHN DOE driver, without any lawful purpose, increased the already excessive speed of the vehicle. This caused plaintiff to suffer great fear for her safety, pain, discomfort, and extreme emotional distress.

87.     Upon arriving at the Southampton Justice Town Court, due to defendants' actions, plaintiff's hands were swollen from the handcuffs and she felt her left ankle to be bleeding through its dressing from the restraints.

88.     Plaintiff was pushed through the door of the court house by the two defendant JOHN DOES who had transported her. There was no reason or purpose for such use of force, as plaintiff was compliant throughout her detention.

89.     Being brought into the courthouse in restraints escorted by law enforcement further added to plaintiff's humiliation, particularly because plaintiff and some of the courthouse employees who were present know each other.

90.     Both before and after arriving at the court house, plaintiff repeatedly requested of the two JOHN DOE defendants who had transported her to allow her to speak to an attorney before her arraignment, but plaintiff's requests were again ignored.

**Arraignment**

91.     Upon information and belief, plaintiff was arraigned at approximately 12:45 p.m. on Friday, July 31, 2009, on a misdemeanor charge of Criminal Trespass in the Third Degree.

92.     Plaintiff was represented at the arraignment by a Legal Aid attorney.

-15-

93.     Upon information and belief, because of intentional misrepresentation and false and inflammatory accusations by, without limitation, defendants CARACAPPA and CARLOCK that plaintiff was a potential terrorist and flight risk, and that she had surveillance equipment in her vehicle, excessive bail was set in the amount of $50,000.

94.     As a result of the foregoing wrongful conduct by defendants and the excessive bail, plaintiff remained in custody until approximately 4 or 5 p.m. on Monday, August 3, 2009, causing her to suffer, without limitation, further loss of liberty, and additional physical injury, physical pain and suffering, and further emotional distress, as described *infra*.

**Plaintiff Erroneously Placed on Suicide Watch**

95.     After plaintiff's arraignment, the Legal Aid attorney representing plaintiff spoke with the JOHN DOE driver from the Suffolk County Sheriff's Office who had transported plaintiff from the Suffolk County Jail to the Town Justice Court.

96.     The Legal Aid attorney then informed plaintiff that he was no longer her lawyer and was going to ask the court to place plaintiff on suicide watch.

97.     Upon information and belief, with respect to the suicide watch, the Legal Aid attorney was acting based on false information issued by and/or at the instigation of the Suffolk County Sheriff's Office.

98.     Upon information and belief, Suffolk County individual defendants CARACAPPA, CARLOCK and JOHN/JANE DOES, including the JOHN DOE driver, sought to punish plaintiff by erroneously placing her on suicide watch for wrongful reasons, including, to make an example of her to other "right wingers" and "tea baggers."

99.     Defendants' actions and comments were a further attempt to chill and punish plaintiff based on the defendants' perceptions and assumptions about plaintiff's political beliefs, associations and speech.

**Transport from Southampton Court to Suffolk County Jail**

100.    Plaintiff was transported from the Southampton Town Justice Court back to the Suffolk County Jail by the same two defendant JOHN DOES from the Suffolk County Sheriff's Office who had transported her to court.

101.    While en route, the JOHN DOE driver (*i.e.*, the same JOHN DOE who had driven plaintiff to court and had spoken with the Legal Aid attorney after plaintiff's arraignment) answered a cell phone call.

102.    At the direction of the caller, who plaintiff heard referred to as "Todd," the JOHN DOE driver stopped the vehicle, removed plaintiff's handbag from its trunk, went through the handbag's contents, and commented to the caller, in words or substance, "Todd, I can't find it," followed by, "Okay, I got it."

103.    When plaintiff asked what the JOHN DOE driver had been looking for, the two JOHN DOES laughed and then ignored her.

104.    When plaintiff's handbag was eventually returned to her, items missing from it, included, without limitation, family court papers and a small pocketknife that had belonged to plaintiff's father.

**Time Spent at the County Jail on Suicide Watch**

105.    Once back at the Suffolk County Jail, plaintiff was processed, including without limitation, being issued prison "greens" to wear and being photographed, fingerprinted and eye

scanned. Plaintiff was verbally taunted by the defendant JOHN DOE member of the Suffolk County Sheriff's Office who took her photograph.

106. Plaintiff was next interviewed by a woman in civilian clothes.

107. The woman indicated that plaintiff was going to be placed in "general population."

108. During the interview, two Suffolk County JOHN DOE defendants wearing "Suffolk County Emergency Response Team" jackets entered the room.

109. One of these JOHN DOE defendants moved plaintiff into the hallway outside of the interview room.

110. From there, plaintiff heard the woman who had interviewed her arguing with the other of the two JOHN DOE defendants wearing a "Suffolk County Emergency Response Team" jacket. Referring to plaintiff, the woman stated to the JOHN DOE, without limitation and in words or substance, "She is not suicidal."

111. Plaintiff was then taken by the two JOHN DOE defendants wearing "Emergency Response Team" jackets to another room.

112. There, without plaintiff's consent, a Suffolk County JANE DOE defendant who identified herself as a nurse administered, without limitation and upon information and belief, two injections in plaintiff's arm.

113. One of the JOHN DOE defendants wearing a "Suffolk County Emergency Response Team" jacket held plaintiff's head so that plaintiff could not see what the JANE DOE nurse was doing to her arm while the other JOHN DOE wearing an "Emergency Response Team" jacket held plaintiff's arm down.

114.    Plaintiff's questions to the JANE/JOHN DOES about what they were doing to her were ignored. Plaintiff was forced to undergo injections of unknown and unwanted substances into her body without her consent.

115.    Afterwards, plaintiff experienced bruising, pain and swelling in her arm that continued long after she was released from custody.

116.    Plaintiff was then escorted by the JOHN DOE defendants wearing "Emergency Response Team" jackets to a cell area.

117.    In the course of escorting plaintiff, one of the DOE defendants used unnecessary and excessive physical force against plaintiff by grabbing her right wrist and pulling her right arm up behind her back toward the back of her head. This caused pain and injury to plaintiff's right wrist, arm and shoulder, causing her to cry out in pain.

118.    In the cell area, plaintiff was required to wear a "suicide gown," consisting of a heavy, jacket-type blanket that fastens around the body with Velcro.

119.    Plaintiff was not permitted to wear underclothes under the blanket.

120.    The weight of the "suicide gown" caused her to suffer pain and swelling due to her rheumatoid arthritis and discomfort because the "suicide gown" retained significant heat.

121.    Plaintiff was required to wear this "suicide gown" at all times from Friday afternoon, July 31, until Monday, August 3, even after it became soiled. Plaintiff's requests for a clean "gown" were ignored.

122.    From Friday to Monday, plaintiff was subjected to, among other things, repeated verbal abuse, taunting and insults from Suffolk County JOHN and JANE DOE defendants, including Suffolk County guards/correction officers, based on their expressed view of her as a "right wing extremist," "right winger" and "tea bagger" who "was going to go Rambo and kill

our troops" and a person who was deserving of punishment. Plaintiff was also subjected to sleep deprivation, denial of access to basic implements of hygiene, denial of access to proper medical care and medication, denial of visits from family members during regular visiting hours, and interference with access to her bail bondsman.

123.    From Friday, July 31, to Monday, August 3, plaintiff continued to suffer pain from her left leg wound and was denied timely and sufficient access to the antibiotics and proper wound care as prescribed to her at the Peconic Bay Medical Center.

124.    Over the course of Friday to Monday, plaintiff developed difficulty standing and walking due to her leg wound and arthritis, which were both exacerbated by the "suicide gown," defendants' rough treatment of plaintiff, and the other conditions of plaintiff's detention and confinement.

125.    Between Friday and Monday, due to the conditions of her detention and confinement, plaintiff became physically ill.

126.    On Monday morning, August 3, 2009, plaintiff was evaluated at the Suffolk County Jail by a psychiatrist who determined her to be of sound and stable mind and immediately removed her from the suicide watch.

127.    Upon information and belief, Suffolk County Sheriff defendants CARACAPPA, CARLOCK and JOHN/JANE DOES sought to punish plaintiff by erroneously placing her on suicide watch for wrongful reasons, including, to make an example of her to other "right wingers" and "tea baggers." Defendants' actions and comments were a further attempt to chill and punish plaintiff based on the defendants' perceptions and assumptions about plaintiff's political beliefs, associations and speech.

128. Defendant CARACAPPA, moreover, falsely stated to the press that plaintiff was being held for a psychiatric evaluation because she "was hysterical – screaming and flailing around" at her arraignment and because her conduct during her arrest and arraignment had been erratic.

129. CARACAPPA made this and other false statements about plaintiff, including without limitation those described *infra* and in paragraph 49 above, in response to media inquiries received pursuant to the Suffolk County Sheriff's Office's July 31, 2009 press release, titled "Armed Woman Arrested for Trespassing at Suffolk County Gabreski Airport/Air National Guard Base," which falsely stated that plaintiff had been "taking pictures of both the air base and surrounding airport property" and further stated that the Sheriff's Office had discovered "an XM-15 assault rifle and a shot gun along with a cache of ammunition" in plaintiff's vehicle. The press release identified CARACAPPA as the contact person and provided his phone number.

130. In response to resulting media inquiries, CARACAPPA falsely stated that 500 rounds of ammunition were found in plaintiff's vehicle, when the actual number was approximately 140 rounds, and characterized her firearms as "scary weapons," adding, "It's very odd."

131. Upon information and belief, CARACAPPA also inaccurately and disparagingly described plaintiff to the press as a divorced, unemployed mother of three, when plaintiff is retired, still legally married although separated from her husband, and two of her three children were then 18 and 20 years old.

132. CARACAPPA's false statements about plaintiff, including but not limited to the foregoing examples and the examples in paragraph 49 above, were published in news articles by, without limitation, the New York Post and Newsday.com, dated August 1, 2009 and August 3,

2009, respectively.   Since publication and continuing to the present, news articles including CARACAPPA's false statements about plaintiff have remained available online and appear reprinted or excerpted on numerous websites and blogs.   Upon information and belief, CARACAPPA's false statements about plaintiff also contributed to other widespread false, negative and alarmist media coverage of plaintiff, including without limitation on local and national television.

**Plaintiff Released After Four Nights and Four Days in Custody**

133.   After being removed from suicide watch, plaintiff remained in custody until approximately 4 or 5 p.m. on Monday, August 3, 2009, when a bond in the amount of $50,000 was posted for her bail.

134.   During the course of plaintiff's false imprisonment at the Suffolk County Jail and due to the conditions of her confinement plaintiff lost substantial weight while in custody.

135.   As noted, items taken from plaintiff during her false imprisonment which have not been returned to her, include, without limitation, $5,300, family court papers, the contents of her car glove box, a small pocket knife that had belonged to her father and the camera memory card seized during plaintiff's initial roadside detention.   The camera itself was also damaged upon its return to plaintiff by the Suffolk County Sheriff's Office.

**The Aftermath of Plaintiff's Arrest and Detention**

136.   Plaintiff was required to pay for a bond to obtain her release and to pay counsel to defend against the criminal trespass charge, appearing on various court dates with the assistance of retained counsel until the charges were favorably dismissed on or about November 17, 2009.

137.   Plaintiff was required to seek medical treatment for, without limitation, the swelling to her wrists and ankles caused by the conditions of her confinement during her false

imprisonment and for the exacerbated injury to her left leg, which due to the lack of proper medical care and medication while she was in custody had developed into a staph infection.

138.    Plaintiff was informed by her doctors that the infection was so severe that she had been at risk of losing part of her leg.

139.    In addition to the physical pain and suffering and emotional distress associated with the exacerbated injury to her left leg, due to defendants' wrongful conduct plaintiff suffered impaired mobility while the injury healed, requiring that she pay for outside help with household tasks she previously performed herself.

140.    As a result of plaintiff's exacerbated injury due to defendants' wrongful conduct, plaintiff also suffered a permanent scar on her left ankle and leg.

141.    Defendants CARACAPPA's and CARLOCK's false accusations, statements, suggestions and innuendos against plaintiff (*e.g.*, and without limitation, that she was a right-wing extremist and terrorist, that she had been on the ANG base property several times and was warned to stay away, that she had surveillance equipment, 500 rounds of ammunition and "scary weapons" in her vehicle on July 30, 2009, that she threw herself on the ground when handcuffed, and that she was "hysterical – screaming and flailing around" at her arraignment and was otherwise erratic requiring she be held for psychiatric evaluation) resulted in news reports, including without limitation by the New York Post and Newsday.com, as well as numerous internet and blog postings and widespread television coverage characterizing plaintiff in negative and alarmist terms, causing her and her family members continuing embarrassment, humiliation, damage to reputation and special damages, including but not limited to costs associated with the excessive bail set based on defendants' false statements, and missed employment opportunities.

142.    Defendants' unlawful seizure and illegal withholding for more than seven (7) months of plaintiff's lawfully possessed firearms and ammunition and defendants' related harassment of plaintiff, including without limitation defendant LUETE's statement in words or substance that he was going to have plaintiff re-arrested, further added to plaintiff's damages.

143.    As a result of defendants' unlawful conduct described above, plaintiff has suffered and/or continues to suffer, without limitation, loss of liberty and property, damage to property, physical injuries, physical pain and suffering, mental anguish, emotional injuries, quality of life injuries, embarrassment, humiliation, shame, indignity, damages to reputation, and special damages, including but not limited to bail bond related fees, medical expenses, legal fees and expenses and other monetary damages.

**AS AND FOR A FIRST COUNT**
CONSTITUTIONAL VIOLATIONS
42 U.S.C. § 1983
*AGAINST IBERGER, CARLOCK, CARACAPPA, LUETE,*
*JOHN/JANE DOES*

144.    NANCY GENOVESE realleges and incorporates by reference each and every allegation above as if fully set forth herein.

145.    Defendants, under color of state law, subjected plaintiff to the foregoing acts and omissions without due process of law and in violation of 42 U.S.C. § 1983 thereby depriving plaintiff of her rights, privileges and immunities secured by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights:

A.    freedom to engage in protected speech, association, and expressive conduct;

B.    freedom from unreasonable seizure of her person, including unreasonable conditions of confinement, excessive use of force and forced injections without plaintiff's consent;

C.    freedom from unreasonable search and seizure of property;

D.    freedom from arrest without probable cause;

E.    freedom from false imprisonment, that being wrongful detention without good faith, reasonable suspicion or legal justification, of which plaintiff was aware and to which she did not consent;

F.    freedom from the lodging of false charges against her by law enforcement officers;

G.    freedom from malicious prosecution by law enforcement officers, that being prosecution that ultimately terminated in plaintiff's favor which was based on information or complaints provided by law enforcement with malice and without probable cause;

H.    freedom from deprivation of liberty without due process of law;

I.    freedom from the denial of equal protection, privileges and immunities under the laws; and

J.    freedom from the deliberate indifference to Plaintiff's serious medical condition.

146.   That by reason of the foregoing, plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs, and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A SECOND COUNT
ALTERNATE LIABILITY
42 U.S.C. § 1983
*AGAINST TOWN AND COUNTY*

147.    NANCY GENOVESE realleges and incorporates by reference each and every allegation above as if fully set forth herein.

148.    Defendants TOWN and COUNTY lacked justifiable reason and rational basis, and thereby engaged in  wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, causing deprivation of plaintiff's rights, privileges, and/or immunities secured by the Constitution and laws.  Plaintiff was made to suffer physical injuries, great pain, loss of esteem and suffering, and was subjected to great fear and terror and personal humiliation and degradation, and continued to suffer physical pain and mental and emotional distress as a result of the individual defendants' unlawful conduct.

149.    Plaintiff acknowledges that *respondeat superior* is not now a basis for the TOWN and COUNTY'S liability under existing law. Plaintiff submits that there exists a good faith argument for the modification of that rule based on the dissenting opinion of Justice Breyer in *Board of County Commissioners of Bryan County, Oklahoma v. Jill Brown*, 520 U.S. 597 (1997), and based upon the literature addressing the issue.

150.    As a result of defendants' unlawful conduct, intentional, negligent, and reckless behavior, and violations of state and federal laws, plaintiff was deprived of her freedom, was made to suffer physical injuries, great pain and suffering, and was subjected to great fear and terror, personal humiliation, degradation, and continued to suffer physical pain and mental and emotional distress.

-26-

151.   That by reason of the foregoing, plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A THIRD COUNT
*MONELL* CLAIM FOR FAILURE TO TRAIN, SUPERVISE AND DISCIPLINE
42 U.S.C. § 1983
*AGAINST TOWN AND COUNTY*

152.   NANCY GENOVESE realleges and incorporates by reference each and every allegation above as if fully set forth herein.

153.   Defendants TOWN OF SOUTHAMPTON and COUNTY OF SUFFOLK, by and through their policymakers, created and maintained respective customs, policies and/or practices of failing to adequately train, supervise and discipline their employees and agents, including the named and unnamed defendants in this case, regarding civilians' rights of free speech, association and expressive conduct; obtaining probable cause to ensure that civilians not be falsely arrested, falsely imprisoned and maliciously prosecuted; and civilians' right to be free from unreasonable and illegal seizure, withholding and theft of personal property.

154.   Defendants TOWN and COUNTY had actual or constructive notice of their failures to train, supervise and discipline their employees. This is because defendants knew that it was foreseeable that their officers would confront situations requiring knowledge of free speech and association rights, probable cause, and limitations on seizure of persons and property, and that without the necessary training, supervision and discipline, constitutional violations would result. Yet defendants TOWN and COUNTY chose not to provide such training, supervision and discipline.

-27-

155.    Defendants TOWN and COUNTY's failure to train, supervise and discipline amounted to gross negligence, deliberate indifference and/or intentional misconduct, and encouraged and/or permitted the named and unnamed individual defendants to engage in the conduct which proximately and directly caused plaintiff's injuries and damages set forth above

156.    That by reason of the foregoing, plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs, and attorneys fees, and any other relief this Court may find just and proper.

**AS AND FOR A FOURTH COUNT**
INDIVIDUAL SUPERVISORY LIABILITY
42 U.S.C. § 1983
*AGAINST CARACAPPA AND CARLOCK*

157.    NANCY GENOVESE realleges and incorporates by reference each and every allegation above as if fully set forth herein.

158.    Individual supervisory defendants CARACAPPA and CARLOCK were, at all relevant times, supervisory personnel in the Suffolk County Sheriff's Office with oversight responsibility for the training, instruction, supervision and discipline of the named and unnamed individual Sheriff's Office defendants who deprived plaintiff of her federal constitutional rights. Individual supervisory defendants CARACAPPA and CARLOCK were personally involved in authorizing, furthering and failing to take preventative and remedial measures to guard against the constitutional deprivations suffered by plaintiff.

159.    Individual supervisory defendants CARACAPPA and CARLOCK knew or should have known that they and the other named and unnamed individual Suffolk County Sheriff's Office defendants were subjecting plaintiff to unreasonable and retaliatory seizure of her person

and property, including unreasonable and retaliatory use of force and conditions of confinement, maliciously causing her prosecution and depriving her of due process of law.

160.    Individual supervisory defendants CARACAPPA and CARLOCK knew, or in the exercise of due diligence, should have known, that the actions taken against plaintiff by themselves as well as the other named and unnamed individual Suffolk County Sheriff's Office defendants were likely to occur.

161.    The failure of the individual supervisory defendants to train, supervise and discipline the named and unnamed individual Suffolk County Sheriff's Office defendants as well as to refrain from themselves authorizing, furthering or failing to prevent the constitutional deprivations suffered by plaintiff amounted to gross negligence, deliberate indifference or intentional misconduct which directly and proximately caused the injuries and damages to plaintiff set forth above.

162.    That by reason of the foregoing, plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs, and attorneys fees, and any other relief this Court may find just and proper.

**AS AND FOR A FIFTH COUNT**
CONSTITUTIONAL VIOLATIONS
42 U.S.C. § 1986
*AGAINST IBERGER, CARLOCK, CARACAPPA, LUETE,*
*JOHN/JANE DOES*

163.    NANCY GENOVESE realleges and incorporates by reference each and every allegation above as if fully set forth herein.

164.    Defendants, acting under color of law, collectively and individually, engaged in actions and abuses which have deprive plaintiff of her rights, privileges and immunities secured

-29-

by the United States Constitution, including, but not limited to, rights secured by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution.

165.    In derogation of their duties, the individual defendants, having the power to do so, failed, neglected and/or refused to prevent the commission of the unlawful stop, false detainment, unlawful accusation, wrongful arrest, false imprisonment, and wrongful seizure of plaintiff and her property, thereby directly and proximately resulting in the deprivation of plaintiff's constitutional rights.

166.    That by reason of the foregoing, plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs, and attorneys fees, and any other relief this Court may find just and proper.

<strong><u>AS AND FOR A SIXTH COUNT</u></strong><br>
NEW YORK STATE CONSTITUTIONAL VIOLATIONS<br>
SUPPLEMENTAL JURISDICTION<br>
<em>AGAINST IBERGER, CARLOCK, CARACAPPA, LUETE,<br>
JOHN/JANE DOES</em>

167.    NANCY GENOVESE realleges and incorporates by reference each and every allegation above as if fully set forth herein.

168.    Defendant IBERGER, CARLOCK, CARACAPP, LUETE, JOHN AND JANE DOES' foregoing acts and omissions breached the protections guaranteed to plaintiff by the New York State Constitution, Article I, §§ 6, 8, 11, and 12, including, without limitation, her following rights:

      A.    freedom to engage in protected speech, association, and expressive conduct;

-30-

B.      freedom from unreasonable seizure of her person, including unreasonable conditions of confinement, excessive use of force and forced injections without plaintiff's consent;

C.      freedom from unreasonable search and seizure of property;

D.      freedom from arrest without probable cause;

E.      freedom from false imprisonment, that being wrongful detention without good faith, reasonable suspicion or legal justification, of which plaintiff was aware and to which she did not consent;

F.      freedom from the lodging of false charges against her by law enforcement officers;

G.      freedom from malicious prosecution by law enforcement officers, that being prosecution that ultimately terminated in plaintiff's favor which was based on information or complaints provided by law enforcement with malice and without probable cause;

H.      freedom from deprivation of liberty without due process of law;

I.      freedom from the denial of equal protection, privileges and immunities under the laws; and

J.      freedom from the deliberate indifference to Plaintiff's serious medical condition.

169.    That by reason of the foregoing, plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs, and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A SEVENTH COUNT
FALSE ARREST
SUPPLEMENTAL JURISDICTION
*AGAINST IBERGER, CARLOCK, CARACAPPA, JOHN/JANE DOES*

170.   NANCY GENOVESE realleges and incorporates by reference each and every allegation above as if fully set forth herein.

171.   Acting under color of law, defendants IBERGER, CARLOCK, CARACAPPA, JOHN/JANE DOES unlawfully arrested plaintiff, caused plaintiff to be arrested, and/or failed to intervene in plaintiff's being unlawfully arrested without probable cause or other legal justification.

172.   The individual defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights, resulting in the injuries and damages set forth above, and are therefore liable for punitive damages.

173.   That by reason of the foregoing, plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs, and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A EIGHTH COUNT
FALSE IMPRISONMENT
SUPPLEMENTAL JURISDICTION
*AGAINST IBERGER, CARLOCK, CARACAPPA, JOHN/JANE DOES*

174.   NANCY GENOVESE realleges and incorporates by reference each and every allegation above as if fully set forth herein.

175.   Defendants wrongfully detained plaintiff and deprived her of her liberty without good faith, reasonable suspicion or other legal justification.

176.   Plaintiff was conscious of, and did not consent to, her confinement.

177. Defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights, resulting in the injuries and damages set forth above, and are therefore liable for punitive damages.

178. That by reason of the foregoing, plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs, and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR AN NINTH COUNT
### MALICIOUS PROSECUTION
### SUPPLEMENTAL JURISDICTION
### *AGAINST IBERGER, CARLOCK, CARACAPPA, JOHN/JANE DOES*

179. NANCY GENOVESE realleges and incorporates by reference each and every allegation above as if fully set forth herein.

180. Defendants, acting under color of law, maliciously caused to be commenced and continued a criminal prosecution against plaintiff, lacking in probable cause, that was terminated in Plaintiff's favor.

181. Defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights, resulting in the injuries and damages set forth above, and are therefore liable for punitive damages.

182. That by reason of the foregoing, plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs, and attorneys fees, and any other relief this Court may find just and proper.

<u>**AS AND FOR A TENTH COUNT**</u>
ASSAULT AND BATTERY
SUPPLEMENTAL JURISDICTION
*AGAINST IBERGER, CARLOCK, JOHN/JANE DOES*

183.   NANCY GENOVESE realleges and incorporates by reference each and every allegation above as if fully set forth herein.

184.   Defendants wrongfully and intentionally made offensive bodily contact with plaintiff without her permission and/or placed her in imminent apprehension of wrongful and offensive contact, including, but not limited to, using excessive force against plaintiff and forcefully injecting unknown and unwanted substances into plaintiff's body without her consent, thereby causing her to suffer physical and emotional injuries.

185.   Defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

186.   That by reason of the foregoing, plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs, and attorneys fees, and any other relief this Court may find just and proper.

<u>**AS AND FOR A ELEVENTH COUNT**</u>
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
SUPPLEMENTAL JURISDICTION
*AGAINST IBERGER, CARLOCK, CARACAPPA, LUETE, JOHN/JANE DOES*

187.   NANCY GENOVESE realleges and incorporates by reference each and every allegation above as if fully set forth herein.

188.   Defendants, by their aforementioned acts, did intentionally, willfully, and knowingly cause plaintiff to suffer mental and emotional distress, pain and suffering, and damage to name and reputation.

189.    Defendants committed the foregoing acts intentionally, wilfully and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

190.    That by reason of the foregoing, plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs, and attorneys fees, and any other relief this Court may find just and proper.

**AS AND FOR AN TWELFTH COUNT**
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
SUPPLEMENTAL JURISDICTION
*AGAINST IBERGER, CARLOCK, CARACAPPA, LUETE, JOHN/JANE DOES*

191.    NANCY GENOVESE realleges and incorporates by reference each and every allegation above as if fully set forth herein.

192.    Defendants, by their aforementioned acts, did negligently cause plaintiff to suffer mental and emotional distress, pain and suffering, and damage to name and reputation.

193.    That by reason of the foregoing, plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs, and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A THIRTEENTH COUNT
NEGLIGENCE
SUPPLEMENTAL JURISDICTION
*AGAINST IBERGER, CARLOCK, CARACAPPA, LUETE, JOHN/JANE DOES*

194.   NANCY GENOVESE realleges and incorporates by reference each and every allegation above as if fully set forth herein.

195.   Defendants, by their aforementioned acts, negligently failed to use due care in the performance of their duties in that they, among other negligent acts:

      A.   failed to perform their duties as a reasonably prudent and careful law enforcement officer or supervisor would have done under similar circumstances;

      B.   carelessly and recklessly seized and detained plaintiff;

      C.   carelessly and recklessly arrested and detained plaintiff without a warrant or probable cause;

      D.   carelessly and recklessly searched, seized and withheld plaintiff's property;

      E.   carelessly and recklessly subjected plaintiff to unreasonable conditions of confinement; and,

      F.   wrongfully, recklessly and without permission forcefully injected unknown and/or unwanted medicine and substances into the plaintiff's body.

196.   That by reason of the foregoing, plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs, and attorneys fees, and any other relief this Court may find just and proper.

-36-

## AS AND FOR A FOURTEENTH COUNT
*RESPONDEAT SUPERIOR*
SUPPLEMENTAL JURISDICTION
*AGAINST TOWN AND COUNTY*

197.    NANCY GENOVESE realleges and incorporates by reference each and every allegation above as if fully set forth herein.

198.    Defendant TOWN OF SOUTHAMPTON is liable for the actions of individual defendant IBERGER under the doctrine of *respondeat superior*.

199.    Defendant COUNTY OF SUFFOLK is liable for the actions of individual defendants CARLOCK, CARACAPPA, LUETE and JOHN/JANE DOES under the doctrine of *respondeat superior*.

200.    That by reason of the foregoing, plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs, and attorneys fees, and any other relief this Court may find just and proper.

**WHEREFORE**, Plaintiff NANCY GENOVESE demands the following relief against Defendants, jointly and severally:

(a) judgment declaring the actions and conduct of defendants unconstitutional;

(b) full and fair compensatory damages in an amount to be determined by a jury;

(c) punitive damages in an amount to be determined by a jury;

(d) reasonable attorney's fees and costs and disbursements of this action;

(e) pre- and post-judgment interest; and

(f) such other and further relief as this Court may deem just and proper.

## *DEMAND FOR A JURY TRIAL*

Dated:     New York, New York
              July 29, 2010

                          THE LAW OFFICES OF
                          FREDERICK K. BREWINGTON

                          FREDERICK K. BREWINGTON
                          G. WILLIAM GERMANO, JR.
                          *Attorney(s) for Plaintiff*
                          556 Peninsula Boulevard
                          Hempstead, New York 11550
                          (516) 489-6959


                          BELDOCK LEVINE & HOFFMAN LLP

                          MYRON BELDOCK
                          CLARE NORINS
                          *Attorney(s) for Plaintiff*
                          99 Park Avenue - Suite 1600
                          New York, New York 10016
                          (212) 490-0400

-38-

DOCKET NO.:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X

NANCY GENOVESE,

Plaintiff,

TOWN OF SOUTHAMPTON, COUNTY OF SUFFOLK,
Southampton Town Police Lieutenant ROBERT BERGER,
Suffolk County Undersheriff JOSEPH T. CARACAPPA,
Suffolk County Deputy Sheriff ROBERT CARLOCK,
Suffolk County Sheriff Lieutenant FREDRICK UBETE,
and "JOHN and/or JANE DOES" 1 through 10 (whose identities
are currently unknown to plaintiff but who are believed to
be employees of the Suffolk County Sheriff's Office),
all of whom are sued in their individual and official capacities,

Defendants.

----------------------------------------X

SUMMONS and COMPLAINT

LAW OFFICES OF
FREDERICK K. BREWINGTON
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959