UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 10-cv-3470 (JFB) (AKT)

NANCY GENOVESE,

Plaintiff,

VERSUS

TOWN OF SOUTHHAMPTON ET. AL.,

Defendants.

**MEMORANDUM AND ORDER**
February 1, 2013

JOSEPH F. BIANCO, District Judge:

Plaintiff Nancy Genovese ("Genovese" or "plaintiff") commenced this action against the Town of Southampton ("the Town"), Southampton Town Police Lieutenant Robert Iberger ("Iberger") (collectively, "the Southampton defendants"), the County of Suffolk, Suffolk County Undersherrif Joseph T. Caracappa, Suffolk County Deputy Sheriff Robert Carlock, Suffolk County Sherrif Lieutenant Frederick Luete, and John or Jane Does 1 through 10 who are believed to be employees of the Suffolk County Sherriff's Office (collectively, "defendants"), alleging that these individuals and entities violated numerous federal and state laws arising out of plaintiff's detention and arrest on July 30, 2009, outside Gabreski Airport. Plaintiff, who possessed a rifle in a gun case, was originally detained after Iberger observed plaintiff taking photographs of a military base. Plaintiff was subsequently arrested by Suffolk County Police Officers for trespass.

As to the claims against the Southampton defendants that are relevant to this motion, plaintiff alleges that Iberger and the Town violated her constitutional rights pursuant to 42 U.S.C. § 1983.[1] Specifically, plaintiff claims that Iberger falsely arrested her, used excessive force against her, and unlawfully seized her firearm, and that the Town is liable for having an unconstitutional policy, practice, or custom, and for failing to train its officers.

The Southampton defendants now move for summary judgment on all of the claims asserted against the Town and Iberger,

---

[1] Although plaintiff's complaint alleges that Iberger also violated her constitutional rights pursuant to 42 U.S.C. § 1986, (Compl. ¶¶ 163-66), plaintiff states in her memorandum of law in opposition to summary judgment that she "respectfully withdraws [her] § 1986 claims." (Pl.'s Opp'n at 1.)

pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants the Southampton defendants' motion in its entirety with respect to the federal claims, and declines to exercise supplemental jurisdiction over the state law claims.

First, with respect to the false arrest claim, it is undisputed that, on July 30, 2009, plaintiff was taking photographs of a vital defense installation. Based upon that undisputed evidence, there was probable cause for Lieutenant Iberger to conclude that plaintiff had violated 18 U.S.C. § 795, which makes it a crime to photograph a vital military installation. In fact, following oral argument, plaintiff acknowledged that "there is nothing to oppose the applicability of 18 U.S.C. § 795 in this matter." (Letter by Nancy Genovese, Aug. 10, 2012, ECF No. 54.) Thus, whether Iberger's detention of plaintiff is characterized as a *Terry* stop or an arrest, his actions were supported by applicable law.

Second, with respect to the excessive force claim, it is uncontroverted that plaintiff tried to stop Iberger from removing the gun case from her car. Moreover, plaintiff's allegation of force is that Iberger's elbow and shoulder came into contact with her body as he retrieved the rifle from the car, but plaintiff also concedes that the push was not strong enough to cause her to fall. Even crediting plaintiff's version of events and construing the facts most favorably to plaintiff, no rational jury could possibly conclude that this minimal contact constituted excessive force.

Third, with respect to the seizure of the rifle, it is undisputed that the gun case was in plain view in the front passenger seat of the car during the lawful detention. In fact, plaintiff confirmed to Iberger that a gun was in the case. Under such circumstances, Iberger had the authority to seize the gun without a warrant during the detention.

In the alternative, the Court concludes that Iberger would be entitled to qualified immunity on each of these claims given the uncontroverted facts in this case.

With respect to the Section 1983 claim against the Town, that claim must fail because there is no underlying deprivation of plaintiff's constitutional rights by a Town employee. In any event, there is no evidence of a policy, practice, or custom that would allow this claim to survive summary judgment against the Town.

Finally, the Court notes that, although there are serious allegations of the use of additional force against plaintiff subsequent to Iberger's stop on July 30, 2009 (after other law enforcement officials arrived) as well as other violations of her constitutional rights, none of the evidence regarding those events relate to the Southampton defendants; rather, those allegations, which are made against the County defendants, relate to conduct after Iberger had already left the area. Therefore, Iberger is not alleged to have had any involvement in those subsequent acts.

Accordingly, summary judgment on the federal claims against the Southampton defendants is warranted, and the Court declines to exercise supplemental jurisdiction over any of the state claims against them. The case will proceed against the County defendants.

I. BACKGROUND

A. Factual Background

The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the parties'

respective Rule 56.1 Statements of Facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50-51 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 Statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.[2]

On July 30, 2009, plaintiff stopped her car on the side of County Road 31 to take pictures of a restored helicopter outside Gabreski Airport, half of which is a United States Air Force Base. (Def.'s 56.1 ¶¶ 1-2, 41.) Plaintiff had a semiautomatic assault rifle in a gun case in her car. (*Id.* ¶ 16.) At approximately 6:40 p.m., Iberger, a Lieutenant with the Southampton Town Police Department who was on vacation that day, observed plaintiff photographing the Airport fence line. (*Id.* ¶¶ 39, 41-42.) Iberger initially pulled over with the intent of merely forwarding the license plate information to Suffolk County Criminal Intelligence once the individual drove past him. (*Id.* ¶ 44.) However, Iberger observed the vehicle continuously moving forward, stopping, and then moving forward again. (*Id.* ¶ 45.) Having been certified by the Department of Homeland Security as a counterterrorism awareness instructor and having previously been involved in incidents of individuals surveying government facilities, Iberger believed plaintiff's activities warranted further investigation. (*Id.* ¶¶ 32-37, 47.)

Iberger followed the plaintiff as she drove her vehicle into the entrance road for the airport, and pulled his car alongside hers.

(*Id.* ¶¶ 46-47.) After observing plaintiff taking photos of the facility, Iberger identified himself as a police officer and asked plaintiff what she was doing and if she saw the signs prohibiting photography of the facility.[3] (*Id.* ¶¶ 49-50.) Plaintiff responded that she "was a patriot and . . . was just taking pictures of the helicopter for her daughter . . . ." (Arntsen Declaration ("Arntsen Decl.") Ex. D, Deposition of Robert Iberger ("Iberger Dep.") at 73.) Plaintiff does not dispute that Iberger asked her whether she saw the signs. (Pl.'s 56.1 ¶ 50; Def.'s 56.1 ¶ 50.) Plaintiff showed Iberger the photographs, and Iberger saw that the photos contained the barbed wire areas and other security features of the fence. (Def.'s 56.1 ¶ 51.)

Iberger unsuccessfully attempted to get the attention of the guard in the security booth at the airport, and was unable to contact the airport by telephone. (*Id.* ¶ 52.) Iberger then called a Southampton Police Dispatcher and asked them to contact the airport. A few minutes later, guards from the airport joined plaintiff and Iberger. (*Id.* ¶¶ 53-54.)

After Iberger showed the guards the photographs, one of the guards asked Iberger whether he was aware that there was

---

[2] In addition, where the parties' Rule 56.1 Statements contain specific citations to the record to support their statements, the Court has cited to the Rule 56.1 Statements, rather than the underlying citation to the record.

[3] *See* 18 U.S.C. § 795 ("Whenever, in the interests of national defense, the President defines certain vital military and naval installations or equipment as requiring protection against the general dissemination of information relative thereto, it shall be unlawful to make any photograph, sketch, picture, drawing, map, or graphical representation of such vital military and naval installations or equipment without first obtaining permission of the commanding officer of the military or naval post, camp, or station, or naval vessels, military and naval aircraft, and any separate military or naval command concerned, or higher authority, and promptly submitting the product obtained to such commanding officer or higher authority for censorship or such other action as he may deem necessary.")

a gun case in the front passenger seat; Iberger told them he was not so aware.[4] (*Id.* ¶¶ 55-56.) Iberger and one of the guards approached the side of the car and observed a gun case on the floor leaning against the door. (*Id.* ¶ 57.) The rifle in the hard case, which said "Bushmaster" on it, was visible from the outside of the car. (*Id.* ¶ 16.)

Iberger asked plaintiff what was in the case; she initially told him it was a shotgun or a rifle, but then said she was not sure what type of gun it was. (*Id.* ¶ 58.) Iberger advised plaintiff that he was securing the case for officer safety. (*Id.*)

Although Iberger does not remember when, at some point plaintiff exited her vehicle. (*Id.* ¶ 59; Iberger Dep. at 86-87.) Iberger told plaintiff twice to stand back while he secured the gun case. (Def.'s 56.1 ¶ 60.) Plaintiff told Iberger that she did not consent to a search. (Arntsen Decl. Ex. C, Deposition of Nancy Genovese ("Genovese Dep.") at 130.) Plaintiff does not dispute that she tried to stop Iberger from removing the gun case from the car. (Def.'s 56.1 ¶ 22; Pl.'s 56.1 ¶ 22.) Plaintiff testified that Iberger "pushed" her, but then stated that it was his elbow and shoulder that came into contact with her body "as he pulled the rifle up off the floor and opened the car door." (Genovese Dep. at 131.) She stated that she lost her balance and was hurt, but that she did not fall. (*Id.* at 130-31.) Plaintiff concedes that any bruises she received that day occurred while being processed in jail by Suffolk County, and not during the incident with Iberger. (Def.'s 56.1 ¶ 24; Pl.'s 56.1 ¶ 24.)

After opening the case, Iberger determined that the weapon appeared to be the stock of an M4 type AR15 assault rifle. (Def.'s 56.1 ¶ 61.) Iberger asked plaintiff why she had the weapon, and plaintiff stated that she had just come from a shooting range. (*Id.* ¶ 63.) Iberger again notified plaintiff that he was going to secure the weapon for officer safety, and subsequently gave it to one of the guards. (*Id.* ¶ 62.)

By this time, two Suffolk County Sheriffs arrived on the scene. (*Id.* ¶ 64.) Iberger testified that he did not contact the Suffolk County Sheriff's office and does not know who contacted them. (*Id.* ¶ 66.)

Plaintiff testified that she was told she was not free to leave, but was also told that she was not under arrest. (Genovese Dep. at 48, 132.) Iberger never placed plaintiff in handcuffs. (*Id.* at 132.) Iberger admitted that plaintiff was not free to leave during the stop. (Iberger Dep. at 106.)

At approximately 7:16 p.m., about thirty-six minutes after he arrived on the scene, Iberger left.[5] (Def.'s 56.1 ¶ 67.) Suffolk County officers continued to detain plaintiff for several hours, and she was later arrested and charged with criminal trespass. (Genovese Dep. at 133.) Iberger was not present at the time of her arrest.[6] (*Id.*)

---

[4] Iberger and the guards could easily see into plaintiff's vehicle because she was driving a convertible with the top down. (Def.'s 56.1 ¶ 43.)

[5] Although plaintiff testified that she believed Iberger was at the scene for at least two hours, (Genovese Dep. at 132), she also does not dispute that Iberger in fact left at 7:16 p.m., less than forty minutes after he arrived. (Def.'s 56.1 ¶ 67; Pl.'s 56.1 ¶ 67; *see also* Iberger Dep. at 96-97.)

[6] Plaintiff alleges that she was verbally harassed and physically assaulted by Suffolk County officers, but those facts are not relevant for the summary judgment motion by the Southampton defendants because plaintiff does not allege that any of those actions were taken by Iberger or another individual employed by the Town.

B. Procedural Background

Plaintiff filed the complaint in this action on July 29, 2010. The Southampton defendants answered the complaint on January 24, 2011. On May 25, 2012, the Southampton defendants moved for summary judgment. Plaintiff submitted her opposition on July 13, 2012, and the Southampton defendants submitted their reply on July 20, 2012. The Court held oral argument on August 1, 2012. At the request of the Court, the parties submitted supplemental letters to the Court following the oral argument. The Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. DISCUSSION

### A. Plaintiff's Section 1983 Claims

Plaintiff asserts that the Southampton defendants violated her constitutional rights under Section 1983. To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 does not itself create substantive rights; it offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

Even if a state actor deprives an individual of their constitutional rights, the doctrine of qualified immunity shields government officials from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)). Thus, qualified immunity is not merely a defense, but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the availability of qualified immunity should be decided by a court "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

"The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed." *Weyant*, 101 F.3d at 858 (internal citations, quotation marks, and alterations omitted). In the context of a false arrest claim, an arresting officer is entitled to qualified immunity if either: (a) the arresting officer's belief that probable cause existed was objectively reasonable, or (b) "officers of reasonable competence could disagree on whether the test for probable cause was met." *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007) (internal citations and quotation marks omitted). The Second Circuit has defined this standard, which is often referred to as "arguable probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they believe to be lawful – should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (internal citations, quotation marks, and alterations omitted). In particular, the Second Circuit has affirmed that "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause. . . . If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). Under this standard, an arresting officer is

entitled to qualified immunity, as a matter of law, only "if the *undisputed facts* and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met." *McClellan*, 439 F.3d at 147–48 (internal citation and quotation marks omitted).

### 1. Fourth Amendment Claims Against Iberger

Plaintiff claims that Iberger violated the Fourth Amendment by (1) unlawfully detaining her; (2) using excessive force; and (3) illegally seizing her rifle. (Compl. ¶¶ 144-46; Pl.'s Opp'n at 3-12.) As set forth below, Iberger is entitled to summary judgment on each of the federal claims because the uncontroverted evidence demonstrates, as a matter of law, that Iberger (1) had probable cause to detain plaintiff; (2) did not use excessive force; and (3) temporarily seized plaintiff's rifle under lawful exceptions to the warrant requirement of the Fourth Amendment. Even crediting plaintiff's evidence and construing the evidence most favorably to plaintiff, no rational jury could conclude otherwise in light of the undisputed facts. The Court will examine each claim in turn.

#### a. False Arrest

Plaintiff argues that Iberger unlawfully detained her when he stopped her outside the airport and did not allow her to leave. (Pl.'s Opp'n at 4-8.) As set forth below, the undisputed evidence demonstrates that Iberger had probable cause to detain plaintiff for violating 18 U.S.C. § 795 by photographing a vital military installation and, thus, this claim cannot survive summary judgment.

In New York, the claim colloquially known as "false arrest" is a variant of the tort of false imprisonment, and courts use that tort to analyze an alleged Fourth Amendment violation in the Section 1983 context. *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). To prevail, a plaintiff must prove four elements: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Id.* (quoting *Broughton v. New York*, 37 N.Y.2d 451, 456 (1975)).

The Second Circuit has established that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Jenkins*, 478 F.3d at 84 (internal citation and quotation marks omitted). In general, probable cause is established where "the [arresting] officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Finigan v. Marshall*, 574 F.3d 57, 62 (2d Cir. 2009) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)); *see also Weyant*, 101 F.3d at 852 (citing *Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979) (additional citations omitted)). Furthermore, "the validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Haussman v. Fergus*, 894 F. Supp. 142, 147 (S.D.N.Y. 1995) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967)). "Rather, the soundness of the arrest hinges on the existence of probable cause at the time the arrest was made." *Id*. Moreover, a determination of probable cause is based upon the "totality of the circumstances, and where law enforcement authorities are cooperating in an investigation . . ., the

7

knowledge of one is presumed shared by all." *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir. 1989) (internal citations and quotation marks omitted); *see also Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant*, 101 F.3d at 852 (citations omitted).

The undisputed evidence demonstrates that Iberger had probable cause to arrest plaintiff because plaintiff violated 18 U.S.C. § 795 by taking photographs of the base.[7] The statute prohibits the making of "any photograph, sketch, picture, drawing, map, or graphical representation of such vital military and naval installations or equipment [that have been defined by the President] without first obtaining permission of the commanding officer [of the entity] . . . and promptly submitting the product obtained to such commanding officer or higher authority for censorship or such other action as he may deem necessary." 18 U.S.C. § 795. Here, because it is undisputed that plaintiff was taking photographs of the base, there was probable cause to arrest her for violation of this statute.[8] *See Weyant*, 101 F.3d at 852 ("Probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.") In fact, when the Court permitted supplemental briefing on this issue following oral argument, plaintiff's counsel was unable to explain to the Court why Section 795 would not apply to plaintiff's conduct. (*See* Letter by Nancy Genovese, Aug. 10, 2012, ECF No. 54 ("After a careful review of this matter, including legal research, and discussions with Your Honor during oral argument, we respectfully wish to advise Your Honor that there is nothing to oppose the applicability of 18 U.S.C. § 795 in this matter.").) In sum, given that "there is no dispute as to the pertinent events" and the existence of probable cause is a "complete defense to an action for false arrest," Iberger is entitled to summary judgment on plaintiff's claim that he unlawfully detained her.[9] *Weyant*, 101 F.3d at 852 (internal citations and quotation marks omitted).

---

[7] The parties dispute whether Iberger arrested plaintiff or whether he merely detained her pursuant to an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968). The Court need not address this issue because, even if Iberger had arrested plaintiff as she alleges, he had probable cause to do so and therefore cannot be held liable under Section 1983.

[8] Although plaintiff was never charged with any violation of federal law for the photographs she took, and the trespassing charges that she was formally arrested for were dismissed, "a plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). Moreover, even though Iberger was a local police officer (and not a federal law enforcement official), he is permitted to detain someone for a violation of federal law. *See, e.g., United States v. Swarovski*, 557 F.2d 40, 49 (2d Cir. 1977) ("We wholly reject the district court's holding in the present case that the new definition of the word 'offense' in the 1967 revision of the Penal Law entirely revoked the power of New York police or peace officers and private persons to make arrests for federal felonies committed in the State of New York."); s*ee also Arizona v. United States*, 132 S. Ct. 2492, 2528 (2012) (Alito, J.) (concurring in part and dissenting in part) ("It is well established that state and local officers generally have authority to make stops and arrests for violations of federal criminal law.").

[9] In the alternative, the Court concludes that, even if probable cause did not exist, Iberger would be entitled to qualified immunity because reasonable

b. Excessive Force

Plaintiff also alleges that Iberger used excessive force when he searched her car. (Pl.'s Opp'n at 8-9.) Specifically, plaintiff testified that Iberger "pushed" her, but then stated that it was his elbow and shoulder that came into contact with her body. (Genovese Dep. at 131.) As set forth below, even crediting plaintiff's evidence and drawing all reasonable inferences in her favor, no rational jury could find that Iberger used excessive force in this case.

A police officer's use of force is excessive in violation of the Fourth Amendment "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). More specifically, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal citations and quotation marks omitted).

Physical force is often necessary when effectuating arrests or executing search warrants and, thus, "not every push or shove" is unconstitutionally excessive, "even if it may later seem unnecessary in the peace of a judge's chambers." *Maxwell*, 380 F.3d at 108 (internal citation, quotation marks, and alteration omitted). The analysis of an excessive force claim involves an inquiry into the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000) (citations omitted).

Even viewing the evidence in the light most favorable to plaintiff, no rational jury could find that Iberger used excessive force when searching plaintiff's vehicle. Iberger had the right to use "some degree of physical coercion" to carry out the search. *Graham*, 490 U.S. at 396. It is undisputed that plaintiff was trying to prevent Iberger from retrieving the gun from the car. (*See* Pl.'s 56.1 ¶ 22 ("It is not disputed that there was physical contact between the Southampton Officer and the plaintiff when plaintiff tried to stop the officer from removing the case containing the ri[f]le from the car. It is disputed, however, that the officer did push plaintiff away from him.").) However, even under plaintiff's version of events, the only physical contact, which occurred as Iberger was trying to secure the rifle, was that his elbow and shoulder came into contact with the right side of her body.

Even crediting plaintiff's version of events, no rational jury could find under the facts of this case that it was unreasonable for Iberger to make contact with his shoulder and elbow in securing the weapon. In fact, it is undisputed that the contact was not forceful enough for plaintiff to fall to the ground and there is no evidence of any injuries. The only rational conclusion that a jury could draw from this evidence is that Iberger merely used the amount of force necessary to separate plaintiff from the area containing the weapon. Even if that degree of force involved a push that caused plaintiff to lose her balance and not fall (as plaintiff claims), no rational jury could conclude that such a push was objectively unreasonable in

---

officers could disagree over whether there was a sufficient basis for plaintiff's detention given the uncontroverted facts described above.

connection with the seizure of a gun from a car. In short, even construing the evidence most favorably to plaintiff, no rational jury could find that Iberger used an unreasonable amount of force under the circumstances. *See Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 405 (S.D.N.Y. 2009) (granting summary judgment to officer defendants as to plaintiff's excessive force claim and finding that a "single push" of an individual into a bathroom during a search of an apartment for weapons was not unreasonable); *see also Wertish v. Krueger*, 433 F.3d 1062, 1066-67 (8th Cir. 2006) ("When a suspect is passively resistant, somewhat more force may reasonably be required."); *Tolan v. Cotton*, 854 F. Supp. 2d 444 (S.D. Tex. 2012) (granting summary judgment on excessive force claim for defendants and holding that "[v]iewed objectively, the force [the Sergeant] used to push [plaintiff], it was not excessive to the need, nor unreasonable under the circumstances").

Finally, even assuming *arguendo* that Iberger unreasonably pushed plaintiff, Iberger would still be entitled to qualified immunity. First, it is axiomatic that the right that plaintiff asserts – namely, plaintiff's right under the Fourth Amendment to be free from excessive force – is clearly established. *See Maxwell*, 380 F.3d at 108. "Where, as here, it is not disputed that freedom from excessive force is a clearly established right, we ask whether 'various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand.'" *Beckles v. City of New York*, No. 11-1226-CV, 2012 WL 3553388, at *1 (2d Cir. Aug. 20, 2012) (summary order) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Plaintiff has not cited any case that suggests it was unreasonable for an officer to lightly push an individual during a lawful search in an attempt to secure a firearm. In fact, as noted above, the case law is clear that officers are permitted to use some force to effectuate a search or an arrest, and the alleged force here would be protected by qualified immunity. *See Graham*, 490 U.S. at 386; *Bancroft*, 672 F. Supp. 2d at 405. Thus, Iberger would be entitled to qualified immunity because, even assuming *arguendo* that defendants' actions were unreasonable under current law, "qualified immunity protects officers from the sometimes hazy border between excessive and acceptable force." *Kerman v. City of New York*, 261 F.3d 229, 239 (2d Cir. 2001) (internal citation, quotation marks, and alterations omitted).

In sum, the Court finds that no rational jury could conclude that Iberger used unreasonable force under the circumstances given the uncontroverted evidence. In any event, assuming *arguendo* that Iberger violated plaintiff's Fourth Amendment rights, Iberger is entitled to qualified immunity because a reasonable officer could believe that he did not violate plaintiff's Fourth Amendment rights even if he made limited contact with her (as plaintiff described) while securing a firearm.

c. Seizure of Rifle

Plaintiff also alleges that Iberger unlawfully seized the rifle that was in her car. (Pl.'s Opp'n at 10-11.) However, the undisputed facts demonstrate that the seizure was lawful under the Fourth Amendment.

Warrantless searches "'are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions.'" *United States v. Howard*, 489 F.3d 484, 492 (2d Cir. 2007) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)). However, the Court finds

that at least two exceptions to the warrant requirement apply here, and thus, Iberger did not violate plaintiff's Fourth Amendment rights when he seized the gun from plaintiff's car without a warrant.

The Supreme Court has held that "[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *Payton v. New York*, 445 U.S. 573, 587 (1980). "Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). Case law clearly supports the proposition that "once a vehicle is lawfully stopped, a police officer's looking through the windows into the vehicle from outside . . . does not constitute a 'search' of the vehicle within the meaning of the Fourth Amendment." *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000) (collecting cases).

Moreover, "[u]nder the so-called automobile exception to the fourth amendment warrant requirement, law enforcement officials may conduct a warrantless search of a movable vehicle when they have probable cause to believe it contains contraband or evidence of a crime." *United States v. Vassiliou*, 820 F.2d 28, 30 (2d Cir. 1987).

In the instant case, all of the requirements of the plain view doctrine are met with regard to the seizure of the gun based upon the uncontroverted facts. First, as discussed *supra*, the detention, during which the gun case was observed, was lawful. Second, it is undisputed that the rifle case (which plaintiff confirmed to Iberger contained a firearm) was in plain view from the outside of the car (because it was leaning against the passenger door on the floor of the open-topped convertible), and that the case said "Bushmaster" on it. Thus, its incriminating character was immediately apparent. The fact that it was a gun case, rather than the gun itself, is legally immaterial because "when [a container's] distinctive configuration proclaims its contents, the container supports no reasonable expectation of privacy and the contents can be said to be in plain view." *United States v. Williams*, 41 F.3d 192, 197 (4th Cir. 1994) (internal citation and quotation marks omitted); *accord United States v. Davis*, 690 F.3d 226, 235 (4th Cir. 2012). Finally, because Iberger had a lawful right to access the gun after seeing the gun case, Iberger had a lawful right to seize it under these circumstances. Therefore, given the undisputed facts, Iberger was authorized to seize the gun without a warrant under the plain view doctrine. *See, e.g., Arkansas v. Sanders,* 442 U.S. 753, 765 n.13 (1979) ("Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance.");[10] *United States v. Stevens*, 635 F. Supp. 1356, 1362 (W.D.

---

[10] Although *Sanders* has been overruled in other respects, this discussion in *Sanders* is consistent with current Supreme Court jurisprudence. *See generally United States v. Davis*, 690 F.3d 226, 269 n.11 (4th Cir. 2012) (dissenting opinion) ("To the extent *Sanders* . . . required that officers who have probable cause that a vehicle contained evidence of crime must obtain a warrant to search closed containers in the vehicle, those cases were overruled. . . . The discussion in *Sanders* . . . of when the contents of a closed, opaque container are nonetheless obvious, however, remain accurate and unaltered." (citations omitted)).

Mich. 1986) ("[T]he Court concludes that a warrant was unnecessary because the distinctive configuration of the gun case effectively rendered its contents in plain view.").

In any event, given that the gun case was in plain view and plaintiff confirmed that a gun was contained in the case, Iberger seized the gun lawfully under the automobile exception in this particular case. *See Vassilou*, 820 F.2d at 30 (seizure of gun from under rear seat of car on a military base was authorized by automobile exception); *see also United States v. Fuller*, No. 07-CR-276, 2007 WL 3006081, at *2 (E.D.N.Y. Oct. 10, 2007) ("[T]he gun in plain view gave the officers probable cause to believe the car contained contraband, thus allowing them to search the car pursuant to the automobile exception to the search warrant requirement.").

Plaintiff argues that Iberger was not entitled to temporarily seize the weapon because she legally possessed the gun and carried it in a locked case. (Pl.'s Opp'n at 10.) Even though it was not immediately apparent that the firearm was unlawful, Iberger was allowed to seize the weapon in plain view because of its inherently dangerous nature, even before he established whether the weapon was illegally possessed. *See, e.g.*, *United States v. Atchley*, 474 F.3d 840, 850 (6th Cir. 2007) ("[Defendant] argues that the seizure of the handgun was impermissible because there was nothing readily apparent that established its illegality. This argument fails, for even if a loaded handgun is legally possessed, because of its inherently dangerous nature, police may seize it if there are articulable facts demonstrating that it poses a danger."); *see also United States v. Wolfe*, 22 F. Supp. 2d 627, 643–44 (E.D. Mich. 1998) (rejecting argument that police could not seize firearms in plain view because officers allegedly knew defendant was a federally licensed firearms dealer and could not determine at the time of search if weapons were illegally possessed). As the Eighth Circuit has noted, "[p]robable cause demands not that an officer be 'sure' or 'certain' but only that the facts available to a reasonably cautious man would warrant a belief 'that certain items may be contraband or stolen property or useful as evidence of a crime.'" *United States v. Garner*, 907 F.2d 60, 62 (8th Cir. 1990) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)); *see also United States v. Malachesen*, 597 F.2d 1232, 1234 (8th Cir. 1979) (holding that officers may temporarily seize firearms during a search "to assure the safety of all persons on the premises").

Therefore, based upon the undisputed facts, Iberger lawfully seized the weapon and plaintiff's Fourth Amendment claim fails as a matter of law.[11] Accordingly, summary judgment on this claim in favor of Iberger is warranted.

B. Plaintiff's *Monell* Claim

Plaintiff also asserts a *Monell* claim against the Town of Southampton. (Compl. ¶¶ 152-56; Pl.'s Opp'n at 12-15.) As set forth below, the Section 1983 claim against the Town cannot survive summary judgment.

The Supreme Court has explained that a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates

---

[11] Even assuming *arguendo* Iberger were not entitled to temporarily seize the rifle under these exceptions, Iberger is entitled to qualified immunity. Although the right to be free from warrantless searches and seizures is clear under the Fourth Amendment, it was objectively reasonable for Iberger to believe that his actions did not violate the law because there is no case law supporting the proposition that temporarily seizing a firearm under the circumstances present here violates the Fourth Amendment.

that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). Instead, constitutional violations by government officials that are "persistent and widespread" can be "so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability." *Sorlucco*, 971 F.2d at 870-71 (citing *Monell*, 436 U.S. at 691) (internal quotation marks omitted). Moreover, a policy, custom or practice of the entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44). However, a municipal entity may only be held liable where the entity *itself* commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

Because plaintiff has not demonstrated any constitutional violations by Iberger or any other individual employed by the Town, there is no basis on which she could predicate *Monell* liability against the Town. When a plaintiff lacks any underlying claim of a deprivation of a constitutional right, the claim of municipal liability on the part of the municipal defendant must be dismissed as well. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.")

Even assuming *arguendo* that the absence of an underlying constitutional violation did not preclude a *Monell* claim in this case, the Court concludes that the Town would still be entitled to summary judgment on that claim because of the absence of any evidence of an unconstitutional policy, practice, or custom by the Town, or a failure to supervise or train, as it relates to the issues in this case. Plaintiff's complaint and Memorandum of Law in opposition to summary judgment merely contain vague and conclusory assertions that the Town should have known that officers would encounter these situations, and that the Town did not adequately train officers to properly respond. These assertions, without any actual supporting evidence, are insufficient to adequately plead a *Monell* claim. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury."), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). Plaintiff's only substantive allegation is that Iberger had been subject to a previous complaint for excessive force, and the Town's failure to discipline him regarding that incident proves that Iberger is minimally supervised and not held accountable for his actions. (Pl.'s Opp'n at 14-15.) However, not only has plaintiff failed to present any evidence that Iberger should have been disciplined regarding this prior complaint, even if Iberger had committed excessive force in the past, "a policy [cannot] ordinarily be inferred" "from the failure of those in charge to discipline a single police officer for a single incident of illegality." *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980)).

Therefore, the Court holds that summary judgment is warranted in the Town's favor,

and that the *Monell* claim against the Town must be dismissed.[12]

### C. New York State Claims

Plaintiff's complaint also asserts causes of action under New York State law. The Southampton defendants argue that, upon dismissal of the federal claims, the Court should decline to exercise supplemental jurisdiction over the state law claims against them. In her opposition, plaintiff does not challenge this argument.

Having determined that the federal claims against the Southampton defendants do not survive summary judgment, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claim because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608, 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction against the Southampton defendants over the remaining state law claims given the absence of any federal claims that survive summary judgment against them, and dismisses such state claims without prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Southampton defendants' motion for

---

[12] Plaintiff also asserts in her complaint a Section 1983 claim against the Town not predicated upon *Monell*. (Compl. ¶¶ 147-51.) Plaintiff's complaint "acknowledges that *respondeat superior* is not now a basis for the [Town's] . . . liability under existing law. Plaintiff submits, however, that there exists a good faith argument for the modification of the rule based on the dissenting opinion of Justice Breyer in *Board of County Commissions of Bryan County, Oklahoma v. Jill Brown*," 520 U.S. 397 (1997). (*Id.* ¶ 149.) Plaintiff's Memorandum of Law in Opposition to Summary Judgment appears to concede that the Town is not liable under a theory of *respondeat superior*, and fails to articulate any basis for challenging the Supreme Court's decision in *Monell*. Because the case law is clear that the Town "cannot be held liable under § 1983 on a *respondeat superior* theory," *Monell*, 436 U.S. at 691, the Second Count of plaintiff's complaint must be dismissed. In any event, as noted above, there was no constitutional violation by any Southampton employees in connection with the alleged conduct in this case.

summary judgment is granted. The Court declines to exercise supplemental jurisdiction over the state law claims as to the Southampton defendants, and dismisses the state law claims without prejudice.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 1, 2013
      Central Islip, NY

\* \* \*

Plaintiff is represented by Frederick K. Brewington and Johanna David, Law Offices of Frederick K. Brewington, 556 Peninsula Boulevard, Hempstead, NY 11550. The attorneys for defendants are Jeltje DeJong and David H. Arntsen, Devitt Spellman Barrett, LLP, 50 Route 111, Smithtown, NY 11787